[S.F. No. 22806. In Bank. Nov. 1, 1971.]

L. E. WEISENBURG, JR., Plaintiff and Respondent, v.
LEMUEL C. CRAGHOLM et al., Defendants and Appellants.

**COUNSEL**

Harold R. Martin, Stark, Stewart, Simon & Sparrowe, John F. Banker and Merrill J. Schwartz for Defendants and Appellants.

Meis, Hill & Sager, Steven T. Sager and Low & Ball for Plaintiff and Respondent.

**OPINION**

**McCOMB, J.**—Defendants appeal from a judgment setting aside certain conveyances found to have been made for the purpose of hindering, delaying, and defrauding plaintiff of his rights as a judgment creditor of defendants Leroy B. Thomas and Jean G. Thomas, husband and wife.

For many years, the Thomases owned a 310-acre tract of land located on Bethel Island in Contra Costa County. Thomas became interested in developing the property as a subdivision and marina. In 1964, he entered into an agreement with plaintiff, a contractor and developer with experience in building marinas, for the purpose of developing the land,

and plaintiff began activities essential for the development, including the obtaining of governmental approval for the conditional road abandonment necessary to utilize the property as a marina.

Plaintiff and Thomas agreed to, and did, form a corporation, which became known as Delta Coves, Inc. (Delta). Plaintiff and two real estate agents were the first directors, but in late 1964 Thomas and defendants Harold R. Martin and Lemuel C. Cragholm also became directors. Pursuant to the original agreement between plaintiff and Thomas, an agreement giving Delta an option to purchase the property at a minimum price of $1,500 an acre (a total of $465,000) was signed on July 1, 1964. In early 1965, a dispute arose between plaintiff and Thomas as to the meaning of the agreement. Cragholm and Martin supported Thomas' interpretation.

In February 1965, Cragholm lent $61,000 to Thomas and received a deed of trust on the Bethel Island property. It was agreed that the money would be used to pay off two of three existing deeds of trust on the property; that Cragholm would receive a first deed of trust as to all the property except for 50 acres, as to which the third encumbrance became first; and that Cragholm would hold a second deed of trust as to that property. Plaintiff was unaware of these developments.

Later, a dispute arose at a Delta board meeting as to when the option to purchase would expire; and, over plaintiff's objections, the corporation refused to exercise its option. In July 1965, plaintiff filed an action against the Thomases for specific performance and damages (action 97605 in the Superior Court of Contra Costa County).

In April 1966, Cragholm advanced Thomas an additional $5,000, for which the previously executed deed of trust was considered security. Until July 1, 1966, Thomas paid approximately $350 a month as interest due on the total loan; but on July 1, 1966, the first payment of principal fell due, and he defaulted in that payment. On September 29, 1966, Cragholm filed a notice of default.

In June 1967, a memorandum decision was rendered in favor of plaintiff in his action against the Thomases. On September 5, 1967, findings of fact and conclusions of law were filed, and judgment was rendered in favor of plaintiff in the sum of $151,607.45, on the theory that the land had increased in value $300,000 as a result of plaintiff's efforts and that under the joint venture agreement between the parties he was entitled to half the enhancement. Because of a technical error, the judgment was vacated September 18, 1967.

On September 26, 1967, Thomas executed a note for $15,000, secured by a deed of trust on his home, to Martin to compensate him for legal services rendered in connection with plaintiff's action against the Thomases.

During September 1967, Cragholm instituted foreclosure proceedings on the Bethel Island property, and on October 9, 1967, a foreclosure sale was regularly conducted. Cragholm made the only bid at the fore-closure sale and received a trustee's deed to the property, which deed was recorded October 11, 1967.

On October 3, 1967, the Thomases conveyed to Nelson by grant deeds two lots adjacent to the Bethel Island property, allegedly as compensation for services rendered by Nelson in 1965 and 1966 with respect to development of the Bethel Island property.

On October 10, 1967, judgment in the sum of $151,607.45 was entered in favor of plaintiff in his action against the Thomases. On that date, the Thomases held assets worth approximately $800. When plaintiff sought to execute on the judgment, it was discovered that the Thomases were, in effect, insolvent.

Plaintiff then brought this action to have the various transfers set aside as made for the purpose of hindering, delaying, and defrauding him of his rights as a judgment creditor of the Thomases. The trial court rendered a judgment in his favor, giving him a lien on each of the parcels of real estate and making such liens "effective from and after October 10, 1967, the date on which judgment was entered by the court in Action Number 97605 on file in this court; but subordinate to Deed of Trust of Lemuel and Clara Cragholm."

While the appeal herein was pending, the Court of Appeal reversed the judgment in plaintiff's favor in action 97605. (*Weisenburg* v. *Thomas,* 9 Cal.App.3d 961 [89 Cal.Rptr. 113] (hg. den. by Supreme Court).)[1] Defendants contend that, as a result, the basis for the trial court's judgment in the present case has been eliminated, and they are entitled to a reversal herein.

■ Question: *When (1) an alleged creditor reduces his claim to judgment, (2) the judgment debtor during pendency of the action transfers his property to third persons, (3) such transfers are later set aside on the ground that they were made for the purpose of defrauding the judgment creditor, (4) the original judgment is subsequently reversed, and (5) that*

---

[1] The basis for the reversal was the fact that the trial court committed error in admitting extrinsic evidence with respect to an alleged oral joint venture agreement, which evidence varied or contradicted the terms of the written land development agreement, and then based material findings of fact on the improperly admitted evidence.

*judgment was the sole basis for the trial court's determination, in the action to set aside the conveyances as fraudulently made, that the alleged creditor was in fact a creditor, is it required that the judgment setting aside the transfers be reversed?*

*Yes.* Section 3439.01 of the Civil Code, which is part of the Uniform Fraudulent Conveyance Act, defines "Creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." ■ Section 3439.09 of the Civil Code lists the rights available to a creditor with a matured claim, and section 3439.10 lists the rights available to a creditor with a claim which has not matured. In both cases, the right to have a conveyance set aside is included under certain conditions, and it is no longer necessary that a creditor reduce his claim to judgment before seeking the benefit of the remedy. (See *Rupp v. Kahn,* 246 Cal.App.2d 188, 197 [55 Cal.Rptr. 108].)

In the present case, plaintiff based his claim that he was a creditor of the Thomases on the judgment which he had recovered against them in action 97605; and the trial court relied entirely on that judgment in determining that plaintiff was a creditor entitled to have the conveyances set aside.[2] Defendants were not permitted in the proceedings in the trial court herein to attack the validity of such judgment. ■ When that judgment was unqualifiedly reversed, however, the effect was the same as if it had never been entered, except that on a retrial the opinion of the Court of Appeal must be followed as far as applicable. (See *Hall* v. *Superior Court,* 45 Cal.2d 377, 381 [2] [289 P.2d 431]; 3 Witkin, Cal. Procedure (1954) Appeal, § 185, p. 2380.) Under the circumstances, since

---

[2]In his complaint, plaintiff alleged, among other things, that he had been awarded a judgment against the Thomases for money damages in the sum of $151,607.45 and that the defendants did "hinder, delay, defeat and defraud plaintiff in his collection of the *aforedescribed judgment debt*" through the alleged fraudulent transfers and foreclosure. (Italics added.)

The trial court found, among other things, that plaintiff had recovered a judgment against the Thomases in the sum of $151,607.45 in action 97605. In the conclusions of law entered by the trial court, it is stated, in part: "2. Plaintiff . . . is a 'creditor' as that term is defined in Civil Code Section 3439.01. *The obligation of defendants Leroy B. Thomas and Jean G. Thomas under the judgment [for $151,607.45]* . . . is a 'debt' as that term is defined in Civil Code Section 3439.01.

" . . . . . . . . . . . . . . . . . . .

"5. All of the transfers and conveyances . . . were made with the actual intent and for the purpose of hindering, delaying and defrauding plaintiff *of his rights as a judgment creditor* of defendants Leroy B. Thomas and Jean G. Thomas and were fraudulent as to plaintiff under California Civil Code Section 3439.07.

" . . . . . . . . . . . . . . . . . . .

"7. Plaintiff . . . is entitled to an equitable lien on each parcel of real property . . . each of *said liens to be effective on October 10, 1967, the date on which judgment was entered by the court in Action No. 97605.*" (Italics added.)

plaintiff is not entitled to the remedy unless he has shown that he is a creditor of the Thomases, and the basis for the finding that he was such a creditor has been eliminated, reversal of the judgment herein is required.

In view of this determination, it is unnecessary for us to reach other questions raised by defendants.

The judgment is reversed.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied December 1, 1971.