Celestus BLAIR, Jr., Plaintiff,

v.

Steven SHANAHAN, individually and in his official capacity, et al., Defendants.

No. C–89–4176 WHO.

United States District Court, N.D. California.

Jan. 31, 1996.

**1362**

Margaret C. Crosby, Alan L. Schlosser, Edward M. Chen, Matthew A. Coles, American Civil Liberties Union, Foundation of Northern CA, Inc., Michael C. Hallerud, Thelen Marrin Johnson & Bridges, San Francisco, CA, for plaintiff.

Louise H. Renne, City Attorney, George A. Riley, Randy Riddle, G. Scott Emblidge, Deputy City Attorneys, San Francisco, CA, for Defendants Shanahan, Lassus, Jordan, Paulson, and City and County of San Francisco.

Daniel Lungren, California Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Morris Beatus, Enid A. Camps, Deputy Attorneys General, San Francisco, CA, for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

This case is before the Court on remand from the Ninth Circuit to determine (1) whether to allow the State of California ("the State") to intervene in the action, and (2) whether to vacate the Court's judgment declaring § 647(c) of the California Penal Code, the anti-panhandling statute, unconstitutional. For the reasons set forth herein, the Court grants the State's motion to intervene and vacates the declaratory judgment.

### I.

Plaintiff, Celestus Blair, Jr. ("Blair"), brought this civil rights action under 42 U.S.C. § 1983 against defendants, five San Francisco police officers[1] and the City and County of San Francisco ("the City"), after he was arrested several times for panhandling in violation § 647(c) of the California Penal Code. The State intervened for the limited purpose of addressing the constitutionality of § 647(c). *See* 28 U.S.C. § 2403(b).

At the time of the action, Blair was no longer a panhandler and there was little prospect of his returning to begging in the future. *Blair v. Shanahan*, 775 F.Supp. 1315, 1319 (N.D.Cal.1991) ("*Blair I*"). The Court nevertheless exercised jurisdiction over Blair's declaratory judgment claim, despite his lack of a present personal stake in the action, because there was an intertwined claim for damages in which Blair clearly did have a personal stake. *See id.* (citing *Giles v. Ackerman*, 746 F.2d 614 (9th Cir.1984) (per curiam)). The Court granted Blair's motion for a declaratory judgment, ruling that § 647(c) is unconstitutional on its face under the First and Fourteenth Amendments. *Id.* at 1329.

After the *Blair I* decision, a settlement was reached between Blair and the City in which the State did not participate. The Court conducted a hearing on the City's offer of judgment under Rule 68 of the Federal Rules of Civil Procedure and expressed its concern that the judgment might render the action moot, thereby precluding an appeal of the declaratory judgment. At the time, the City contended that an appeal would remain viable. On January 2, 1992, the Court entered judgment in the case pursuant to the offer of judgment.

Shortly afterwards, however, the City, joined by the State, made a motion under Rule 60(b) of the Federal Rules of Civil Procedure to modify or vacate the judgment, apparently fearing that the settlement of Blair's damages claim had indeed mooted its appeal. The Court refused to vacate the offer of judgment, finding no equitable basis for doing so. *Blair v. Shanahan*, 795 F.Supp. 309, 311 (N.D.Cal.1992) ("*Blair II*").

---

1. Defendants Steven Shanahan, James Lassus, Stephen Paulson, Christopher Breen, and Jeffrey Levin.

The Court also ruled that the State had no standing as an intervenor under 28 U.S.C. § 2403(b) to bring and argue such a motion. *Id.* at 317–19.

The fears about mootness were well-founded. The Ninth Circuit affirmed the *Blair II* decision, but dismissed the City's appeal of the *Blair I* decision. *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir.1994) ("*Blair III* "). The Court of Appeals concluded that it lacked Article III jurisdiction over the City's appeal from the declaratory judgment because Blair's claim for damages had been settled, leaving Blair with no personal stake in the action and eliminating any live case or controversy to support appellate jurisdiction. *Id.* at 1519–20. The Ninth Circuit remanded the case in order to allow this Court to determine whether vacating the declaratory judgment would be appropriate given the mootness of the action. *Id.* at 1521.

The City now urges the Court to vacate its *Blair I* decision, which Blair opposes. The State moves to intervene. Assuming it is allowed to do so, the State joins the City's motion and argues that vacatur is appropriate.

## II.

### A.

As noted above, the State intervened in the *Blair I* action pursuant to 28 U.S.C. § 2403(b), which allows intervention by the State "to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality" of a state statute.

In *Blair II*, however, the Court ruled that the State had no standing to challenge the Rule 68 offer of judgment because that determination had nothing to do with the constitutionality of § 647(c), the only issue on which the State could be heard under the limited scope of intervention provided by § 2403(b). 795 F.Supp. at 319. The Court of Appeals affirmed the Court's holding. *Blair III*, 38 F.3d at 1522.

■ The State now petitions the Court again for leave to intervene and to file a brief in support of vacatur. The State argues that it has a "substantial" interest in federal litigation affecting the constitutionality of its statutes. *See Maine v. Taylor*, 477 U.S. 131, 136, 106 S.Ct. 2440, 2446, 91 L.Ed.2d 110 (1986).

The State contends that intervention of right, presumably under Rule 24 of the Federal Rules of Civil Procedure, is proper where the State's briefing is necessary to present the facts and law relating to the question of constitutionality and where the issue of vacatur bears directly on the State's substantive right to intervene and argue the constitutionality of its statutes.

Rule 24(a)(1) provides that "anyone shall be permitted to intervene in an action … when a statute of the United States confers an unconditional right to intervene…." Fed.R.Civ.P. 24(a)(1). The State, however, does not meet the requirements of § 2403(b) because the vacatur issue is unrelated to the constitutionality of § 647(c). *Cf. Blair III*, 38 F.3d at 1522 (affirming the Court's holding that the State lacked standing because whether to vacate the consent judgment was unrelated to the constitutionality of the anti-panhandling statute). Thus, the State does not have an unconditional right to intervene under a United States statute for purposes of Rule 24(a)(1).

■ The State does, however, satisfy the standards of Rule 24(a)(2), which provides:

[A]nyone shall be permitted to intervene in an action … when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The Ninth Circuit broadly construes Rule 24 in favor of applicants for intervention. *See United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), *rev'd on other grounds*, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987).

As the State argues, intervention is appropriate here because the continued existence of the Court's declaratory judgment invali-

dating the State's statute "may as a practical matter impair or impede" the State's ability to protect its interests in the law. Fed. R.Civ.P. 24(a)(2). In addition, the Court agrees that the State's interests are not adequately represented by the City, even though both the City and the State are in favor of vacatur. Therefore, the State meets the standard for intervention under Rule 24(a)(2).

## B.

■ Ordinarily, vacatur is the "established practice" where a case has become moot on its way to the appellate court. *Blair III*, 38 F.3d at 1520 (quoting *United States v. Munsingwear*, 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950)). However, "the *Munsingwear* procedure of vacating the district court judgment does not apply when the appellant rendered the appeal moot by his own act." *Blair III*, 38 F.3d at 1520 (explaining *Ringsby Truck Lines v. Western Conference of Teamsters*, 686 F.2d 720 (9th Cir.1982)). The so-called "*Ringsby* exception" is based on the view that "a dissatisfied litigant should not be allowed to destroy the collateral consequences of an adverse judgment by destroying his own right to appeal." *Blair III*, 38 F.3d at 1520 (quoting *Allard v. DeLorean*, 884 F.2d 464, 467 (9th Cir.1989)).

Although the *Ringsby* exception contemplates a litigant who seeks *deliberately* to abuse the automatic vacatur procedure, the Ninth Circuit cautioned that "a litigant who does not intend to moot [its] appeal—as the City here maintains—should [not necessarily] be excepted from the *Ringsby* rule." *Blair III*, 38 F.3d at 1521. The Court of Appeals reasoned that such an exception "would create the incentive for litigants to plead ignorance of the mootness rules." *Id.*

Thus, the Ninth Circuit remanded the issue of vacatur, pursuant to its usual practice under *Ringsby*, and issued the following mandate to this Court:

The district court must ... "balance the consequences and attendant hardships 'be-

tween the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" In balancing these consequences and attendant hardships, however, it is appropriate for the district court to take into account whether the City thought that the declaratory judgment would be unreviewable due to settlement. If the City would not have settled had it known it was mooting its appeal of the declaratory judgment, that fact equitably weighs in favor of vacating the judgment. The constitutional nature of the question is also a consideration.

*Blair III*, 38 F.3d at 1521 (citation omitted). Each of these issues will be addressed in turn.

### 1.

■ The City argues that it "would not have settled had it known it was mooting its appeal of the declaratory judgment." *Id.* Indeed, the City contends that it settled the damages claim in order to *expedite* its appeal of the declaratory judgment, not to avoid such an appeal.[2] Assuming it to be true, "that fact equitably weighs in favor of vacating the judgment." *Id.*

The Court does not doubt that the City genuinely desires appellate review of the declaratory judgment. As the Ninth Circuit pointed out, however, the City's lack of intent to moot its appeal alone does not warrant vacating the Court's judgment. *Id.* Moreover, the Court is skeptical of the City's professed naivete about the potential for mooting its appeal by settling Blair's damages claim. First, the Court made clear in its *Blair I* decision that jurisdiction over the declaratory judgment action hinged *only* on the intertwined damages claim. 775 F.Supp. at 1319. Second, the Court expressed to the City its concern about the potential mootness problem at the hearing on the Rule 68 offer of judgment. *See Blair II*, 795 F.Supp. at 312–13.

---

**2.** Blair argues that the City actually *agreed* to moot the appeal as part of settlement. This argument is specious; as the Court found in its earlier decision, the Rule 68 offer of judgment

was silent with respect to appeal rights. *Blair II*, 795 F.Supp. at 314. Furthermore, the City vigorously contests this allegation.

The Court finds that this factor does not weigh clearly either in favor of or against vacatur.

### 2.

The parties disagree on what the Ninth Circuit meant by stating that "[t]he constitutional nature of the question is ... a consideration" in determining whether to vacate the declaratory judgment invalidating § 647(c). *Blair III,* 38 F.3d at 1521. Blair argues that "the constitutional nature of the question" refers to the important free speech issue decided by this Court's *Blair I* decision and that decision's public value as a precedent protecting free speech rights. Therefore, in Blair's view, this consideration weighs against vacating the judgment.

The City, by contrast, contends that the Ninth Circuit meant that the City and the State, on behalf of the public, should not be precluded from obtaining appellate review of the constitutionality of the anti-panhandling statute as a result of mootness and that, therefore, this factor weighs in favor of vacatur.

Though sympathetic to Blair's argument, the Court finds that the City's interpretation of the Ninth Circuit's mandate is the accurate one, given the context.[3] The constitutionality of § 647(c) is a significant issue that should not, without good reason, be precluded from appellate review on the merits. This factor weighs equitably in favor of vacatur.

### 3.

Taking into consideration the importance of the question of the anti-panhandling statute's constitutionality, the Court must "balance the consequences and attendant hardships between the competing values of finality of judgment and right to relitigation of unreviewed disputes." *Blair III,* 38 F.3d at 1521 (citation and internal quotation marks omitted).

Two reasons support vacating the declaratory judgment: First, the State would be unfairly precluded from appealing the constitutional issue and, second, further appellate review of the constitutionality of § 647(c) would be effectively unavailable. Weighed against these reasons, and against vacatur, are the interests of Blair and the public in the Court's precedent.

The State has a strong argument that vacatur is necessary to allow it to obtain full review of the constitutionality of its statute, which was prevented through no fault of its own. Although the *City* mooted its appeal by its own act, the State did not participate in the settlement of Blair's damages claim, which mooted both the City's and the State's appeals. "[T]he touchstone of vacatur is equity.... 'A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.'" *Dilley v. Gunn,* 64 F.3d 1365, 1370 (9th Cir.1995) (quoting *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* —— U.S. ——, ——, 115 S.Ct. 386, 391, 130 L.Ed.2d 233 (1994)).

The State has a substantial interest in the outcome of this case, that is, a legitimate interest in the continued enforcement of its anti-panhandling statute. This interest is implicitly recognized by the provisions of 28 U.S.C. § 2403(b), which allow the State to intervene, as it did in this case, "to the extent necessary for a proper presentation of the facts and law related to the question of constitutionality" of a state statute. The crux of the State's argument is that it should not lose its right to appeal the Court's determination that its statute is unconstitutional by virtue of a consent judgment in which it did not participate.

---

**3.** The logic of the *Blair III* opinion unfolds as follows: Generally speaking, vacatur is appropriate where a case has become moot pending appeal. *See* 38 F.3d at 1520. The exception is where the appellant renders his own appeal moot by his own act. *Id.* Such was the case here. *Id.* The fact that the City did not intend to moot its appeal does not take it out of this exception because that would create an incentive for a litigant to be ignorant of mootness rules.

*Id.* at 1521. Thus, the Court of Appeals remands the case for determination of the vacatur issue, as is its usual practice in such cases. *Id.* Nevertheless, this Court should take into consideration both the City's possible lack of intent and the constitutional nature of the underlying question—the validity of § 647(c)—in deciding whether vacating the judgment is appropriate. *See id.*

Blair argues that the State cannot now complain of being precluded from seeking further review of the Court's declaratory judgment because (1) the State could have intervened as a full party under Rule 24 but chose not to do so, and (2) the State essentially delegated to the City the role of resolving the case.

Blair's arguments are unpersuasive. As the State maintains, it had no reason to intervene under Rule 24 because it could, and did, do so under § 2403(b). Furthermore, the City and the State do not share congruent interests; indeed, the very existence of § 2403(b) reflects a recognition that the interests of the State and its localities do not fully overlap where the constitutionality of a state statute is at issue. Here, as the defendants argue, the City's primary concern was avoiding damages liability, whereas the State's primary concern was upholding its statute.

Another argument in favor of vacatur is the likelihood that, so long as the Court's precedent stands, the State will be unable to obtain appellate review of the declaratory judgment via any *other* court action. As defendants argue, law enforcement officers throughout California will be unwilling to "retest" the constitutionality of § 647(c) in the face of this Court's decision. An officer attempting to enforce the statute would likely lose qualified immunity and be subject to personal liability, because *Blair I* clearly establishes that the law violates the civil rights of those punished under it. 775 F.Supp. at 1322–26; *see Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir.1994) (police officer not entitled to immunity if "the constitutional right is clearly established" and no "reasonable police officer could have believed, in light of the settled law, that he was not violating a constitutional ... right"), *cert. denied,* —— U.S. ——, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995); *cf. Act Up!/Portland v. Bagley*, 988 F.2d 868, 872–73 (9th Cir.1993) (illustrating that "clearly established legal principles" are established by case law).[4]

Blair disputes the City's argument by asserting that the Court did not actually enjoin

enforcement of the statute and that, therefore, the State can enforce it. Blair's reasoning is absurd. A facially unconstitutional statute cannot, of course, be enforced (constitutionally) against anyone. "*Any* attempt to enforce [the] statute would flout this Court's order." *Blair II*, 795 F.Supp. at 317 (emphasis added).

Vacating the declaratory judgment poses little hardship to Blair. While Blair contends that the "principal consideration offered by the City for settlement" was mootness, that is, the foreclosing of any appeal of the declaratory judgment, that is hard to believe. (*See* Pl.'s Opp'n, filed Aug. 7, 1995, at 11.) First, as discussed above, the Rule 68 offer of judgment makes no mention of appeal rights. Second, it has been clear from the beginning of this case that Blair is no longer a panhandler and that there is little chance that he will return to panhandling in the future. As a result, Blair has no present personal stake in the declaratory judgment for purposes of jurisdiction. The declaratory judgment has essentially no direct impact on Blair's life.

In considering whether to vacate a precedent, the Court must also take into account the public interest. *U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 392. Blair argues that the Court's *Blair I* decision is important to the public interest in that it advances First Amendment debate and protects freedom of speech. The State, however, can also legitimately claim to represent the public interest by seeking to enforce the anti-panhandling statute.

Weighing the conflicting interests of Blair, the City, and the State, the Court holds that vacatur of the declaratory judgment is proper in this case. " 'Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand *unless a court concludes that the public interest would be served by a vacatur.*' " *Id.* (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting)) (emphasis

---

4. In addition, it appears that the State would be precluded from challenging the *Blair I* decision

in another action by the doctrines of res judicata and collateral estoppel.

added). This is such a case. The Court finds that the asserted public interest in the precedential value of *Blair I* does not outweigh the State's interest—and the concomitant public interest—in obtaining review of the important constitutional issue of § 647(c)'s constitutionality. As discussed above, the Ninth Circuit's concern about the "constitutional nature of the question" in this case weighs in favor of vacatur. Because issues involving freedom of speech under the First Amendment are so important to the public, they should be subject to the normal course of appellate review, not arrested by an unreviewable, mooted district court decision. *See Blair III*, 38 F.3d at 1521.

### III.

IT IS HEREBY ORDERED that:

1. The State's motion to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure is GRANTED.

2. The State's and the City's motion to vacate the Opinion and Order filed September 24, 1991, as amended by Order filed October 10, 1991, is GRANTED.